# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MAHONEY, parent of B.M., a minor; KATE MAHONEY, parent of B.M., a minor, <br><br> Plaintiff, <br> vs. <br><br> CARLSBAD UNIFIED SCHOOL DISTRICT, a local educational agency, <br><br> Defendant. | CASE NO. 08-CV-1860 H (NLS) <br><br> **ORDER:** <br><br> **(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> **(2) DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

On February 17, 2009, Plaintiffs filed a motion for summary judgment appealing an administrative decision holding that Defendant complied with the Individuals with Disabilities in Education Act with regard to Plaintiffs' child B.M. (Doc. No. 14.) On March 9, 2009, Defendant filed its response in opposition and cross-motion for summary judgment. (Doc. No. 17.) On March 16, 2009, Plaintiffs filed a reply in support of their motion for summary judgment. (Doc. No. 18.) Defendant filed its reply on March 23, 2009. (Doc. No. 21.) On April 6, 2009, the Court heard oral argument on the cross-motions for summary judgment. Ellen Dowd appeared on behalf of the Plaintiffs. Jonathon Reid and Tiffany Santos appeared on behalf of the Defendant. After due consideration of the administrative record, the parties' submissions, and the argument before the Court, the Court grants Defendant's motion for

summary judgment and denies Plaintiffs' motion for summary judgment for the following reasons.

## Factual & Procedural Background

Plaintiffs are the parents of B.M., a twelve-year-old student. B.M. initially qualified for special education services in March 2005 under the category of "speech or language impairment." (AR 1498, 1183.) At that time, Carlsbad Unified School District ("the District") provided B.M. with small-group speech and language services through Cynthia Schmitz, a District-employed speech therapist. (AR 112, 1183.) Ms. Schmitz is highly qualified. She received her B.A. in Speech and Hearing and a subsequent M.S. in Speech and Hearing through Eastern Washington University in 1976. (AR 98-100.) She has approximately 27 years experience as a speech and language therapist and has more than 1200 students over the course of her career. (AR 106-108.)

In April 2005, Plaintiffs removed B.M. from the District and taught him at home. (AR 863, 1183.) In 2007, Plaintiffs requested a due process hearing before the California Office of Administrative Hearings. Plaintiffs eventually settled that claim against the District when the District agreed to fund services for B.M. at Foundations for Reading and Learning ("FRL"), a private program not certified by the California Department of Education as a nonpublic agency or a nonpublic school. (AR 845-46, 729.) Trish Padgett, the director of FRL, worked with B.M. through District funding beginning in June 2007. (AR 729.)

Later in 2007, District personnel began a series of evaluations of B.M. for the purpose of designing an Individualized Education Program ("IEP") to meet his needs. Speech therapist Cynthia Schmitz conducted two speech and language evaluations of B.M. (AR 130.) Ann Jordan, a District occupational therapist, conducted an assessment of B.M. with the goal of determining his need for in-class assistance. (AR 320-21.) Karissa Neilson, a District education specialist certified in disability education, conducted an academic assessment of B.M. (AR 1360-62, 1418.) John Pappas, Ph.D., a District psychologist, performed a psychological evaluation of B.M. (AR 1486-92.) Dr. Pappas's tests showed that B.M.'s IQ was at or slightly above average, but that he displayed signs of suffering from ADHD. (Id.)

Also in Fall 2007, Plaintiffs enrolled B.M. at the Encinitas Country Day School, a private school. (AR 877-86, 1185.) Plaintiffs did not inform the District IEP team about B.M.'s enrollment at the private school. Instead, Mrs. Mahoney informed District that B.M. was home-schooled during that time. (Id.) B.M. remained at Encinitas Country Day School for just one semester, after which Mrs. Mahoney removed him because she believed he was not obtaining any educational benefit at that institution. (AR 877, 887.)

On January 24, 2008, the District convened an IEP team meeting to review the results of B.M.'s assessments and develop an appropriate IEP. (AR 1336, 1188.) District representatives at the meeting included Schmitz, Pappas, Jordan, and Neilson, as well as J. Bruce Kramer (a school administrator), Hun Kaplowitz (a general education teacher from B.M.'s neighborhood school, Hope Elementary), Juanita Bass (a special education teacher at Hope), Hope's speech pathologist, and Hope's school psychologist. (AR 1188, 1353.) The District's attorney was also present, as was Mrs. Mahoney and her attorney. (Id.) The team was unable to complete the IEP at that meeting, and reconvened on February 20, 2008. (AR 1188, 1355.)

At that time, the team agreed that B.M. was eligible for special education under the category of "specific learning disability." (AR 1355.) The IEP designed by the team would entail B.M. enrolling at Hope Elementary in general education with 60 minutes of learning center instruction per day, 30 minutes of speech and language services per week and 30 minutes of occupational therapist services per week. (AR 1355-56.) To facilitate B.M.'s transition from home school, the team proposed that B.M. initially attend Hope for the first half of the day and participate in the familiar FRL program with Trish Padgett for the second half of the day. These supplemental sessions would gradually be reduced until B.M. was attending Hope for the entire day. (AR 1356.) The District offered to provide transportation from Hope to FRL. (Id.) The team also proposed that B.M. participate in a social skills group with the Hope school psychologist and 2-3 peers and provided that B.M. would be able to meet with the psychologist or the school learning center as needed to address any social or emotional problems during the school day. (Id.) Mrs. Mahoney rejected this IEP and requested that B.M.

attend a nonpublic school.  (Id.)  The team unanimously agreed that its IEP did not warrant a level of service requiring a nonpublic school placement and formalized this decision in a written response to Mrs. Mahoney.  (AR 700.)

On March 14, 2008, the District filed a due process request with the California Office of Administrative Hearings seeking a finding that its IEP offer to B.M. constituted a Free and Appropriate Public Education under the Individuals with Disabilities in Education Act.  (AR 1037.)  Administrative Law Judge Susan Ruff conducted the due process hearing on May 13-15 and June 10, 2008.  (AR 1182.)  Plaintiffs and Defendant were represented by counsel.  (Id.)  The Administrative Law Judge ("ALJ") took the matter under submission after the parties filed their writen closing arguments on June 18, 2008.  (Id.)  On July 16, 2008, the ALJ issued a 22-page decision in favor of the District.  (Id.)

Plaintiffs appeal the ALJ's decision on two grounds.  First, Plaintiffs argue that the IEP team did not include individuals whose presence was required by statute.  Second, Plaintiffs assert that the ALJ improperly relied on inadmissible evidence and reached factual conclusions outside the proper scope of the administrative proceedings.

## **Discussion**

**I.     IDEA Appeal – Legal Standard**

Under the federal Individuals with Disabilities Education Act ("IDEA") and related California statutes, students with disabilities have the right to a free appropriate public education ("FAPE"). 20 U.S.C. § 1400 et seq.; Cal. Ed. Code § 56000 et seq.  Section 56000 of the California statute states that "this part does not set a higher standard of educating individuals with exceptional needs than that established by Congress under the Individuals with Disabilities Education Act." Cal. Ed. Code § 56000(e).  The IDEA defines a FAPE as special education and related services that (1) are provided without charge at public expense and under public supervision and direction, (2) meet the standards of the State educational agency, (3) include an appropriate preschool, elementary school, or secondary school education within the State, and (4) are provided in accordance with an individualized education program ("IEP") – a written plan tailored to address the educational needs and goals of the

student. 20 U.S.C. § 1401, 1414(d). In implementing the IDEA, the U.S. Department of Education has promulgated regulations codified at 34 C.F.R. § 300.1 et seq.

The IDEA imposes a number of procedural requirements on public education entities, and "[c]ompliance with IDEA procedures is essential to ensuring that every eligible child receives a FAPE, and those procedures which provide for meaningful parental participation are particularly important." JG v. Douglas County Sch. Dist., 552 F.3d 786, 794 (9th Cir. 2008) (internal quotes omitted). The importance of these procedural requirements is underscored by the "general and somewhat imprecise substantive admonitions" contained in the statute. Id. (quoting Board of Ed. Of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 205 (1982)).

"Procedural flaws in the IEP process do not always amount to the denial of a FAPE." L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 909 (9th Cir. 2009). Therefore, once a court finds a procedural violation of the IDEA, it must determine whether that violation affected the substantive rights of the parent or child. Id. A procedural inadequacy will constitute the denial of a FAPE where it "result[s] in the loss of educational opportunity" or "seriously infringe[s] the parents' opportunity to participate in the IEP formulation process." Id. (quoting W.G. v. Board of Trustees of Target Range Sch. Dist. No. 23, 960 F.2d 1479, 1484 (9th Cir. 1992)).

This Court has jurisdiction to review the administrative decision under 20 U.S.C. § 1415(i)(2), which provides that the reviewing court must receive the records of the administrative proceedings, hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, grant such relief as the court determines is appropriate. In IDEA cases, a "highly deferential" standard of review is inappropriate, as is de novo review. Douglas County, 552 F.3d at 793. Instead, federal courts are to give "due weight" to the state administrative proceedings. Id. Courts give "particular deference" to "thorough and careful" administrative findings, recognizing that the "fact-intensive nature of a special education eligibility determination coupled with considerations of judicial economy

render a more deferential approach appropriate." Id. (quoting Hood v. Encinitas Union Sch. Dist., 486 F.3d 1099, 1104 n.4 (9th Cir. 2007)). Thus, in determining the appropriate level of deference, the Court must evaluate the thoroughness and care of the Administrative Law Judge. See Capistrano, 556 F.3d at 908.

In this case, the record before the Court demonstrates that the ALJ rendered findings based on a careful and thorough consideration of the evidence and applicable law. The parties presented a substantial amount of evidence and testimony and the administrative hearing lasted four days. The transcripts of those sessions show that the ALJ took an active role in the process in order to obtain all relevant evidence and clarify witness testimony. After allowing the parties to submit their written closing arguments, the ALJ issued a 22-page memorandum decision. Accordingly, the Court concludes that the findings of the ALJ are entitled to particular deference, and reviews the decision consistent with that standard.

## II.     Whether the IEP Team Contained All Required Participants

Plaintiffs' first argument is that the IDEA required the presence of Trish Padgett at the IEP team meetings in early 2008. Ms. Padgett was not in attendance; instead, FRL submitted a written report that was considered by the IEP team members in developing their proposed program for B.M. (AR 307, 1363-65, 1380-90.)

The IDEA expressly requires the presence of certain individuals during meetings to formulate a student's IEP. Under the statute, the IEP team must include: (1) the parents of the child, (2) not less than 1 regular education teacher of the child, (3) not less than 1 special education teacher, or where appropriate, not less than 1 special education provider of such child, (4) a knowledgeable representative of the local educational agency, (5) an individual who can interpret the instructional implications of evaluation results, and (6) at the discretion of the parent or the agency, other individuals who have knowledge or special expertise regarding the child, including related services personnel as appropriate. 20 U.S.C. § 1414(d)(1)(B).

In support of their argument that this statute required the presence Ms. Padgett, Plaintiffs cite Shapiro v. Paradise Valley Unified Sch. Dist., 317 F.3d 1072 (9th Cir. 2003).

In Shapiro, the Ninth Circuit held that a school district had violated the IDEA when an IEP team failed to include a teacher from the nonpublic school that the student attended. Id. at 1076. However, Shapiro interprets an earlier version of the IDEA, and was superseded on this point by the 1997 amendments to the statute. See Capistrano, 556 F.3d at 909 (recognizing that Shapiro was superseded by 20 U.S.C. 1414(d)(1)(B)).

Following the 1997 amendments to the IDEA, the Ninth Circuit has held that the IDEA no longer requires the presence of the student's current regular education teacher or special education teacher on the IEP team. R.B., ex rel. F.B. v. Napa Valley Unified Sch. Dist., 496 F.3d 932, 939-40 (9th Cir. 2007). The Napa Valley court explained that the revised language of the IDEA gives school districts more discretion in choosing which teachers to include in the IEP team. Id.

Considering the IDEA, the federal Office of Special Education Programs ("OSEP") has explained that "[d]ecisions as to which particular teacher(s) or special education provider(s) are members of the IEP Team . . . are best left to State and local officials to determine, based on the needs of the child." Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities, 71 Fed. Reg. at 46,670. The OSEP went on to advise that "the special education teacher or provider who is a member of the child's IEP Team should be the person who is, or will be, responsible for implementing the IEP." Id. In this case, B.M.'s IEP team included Ms. Schmitz, a speech therapist who actually served and assessed the student, Ms. Neilson, a special education teacher who assessed B.M., and Ms. Bass, a special education teacher who would have been responsible for implementing the IEP at Hope, B.M.'s neighborhood school. Accordingly, the Court concludes that the ALJ did not err in holding that the District assembled a statutorily compliant IEP team.

Moreover, even if Plaintiffs could establish a procedural violation on these facts, there is insufficient evidence in the record that any violation caused a "loss of educational opportunity" or "seriously infringe[d] the parents' opportunity to participate in the IEP formulation process." Capistrano, 556 F.3d 909. B.M.'s IEP was developed by a number of

diligent and qualified professionals who convened for two sessions before formalizing a thoughtful customized education plan. Mrs. Mahoney was present at both sessions, and had an attorney with her for at least the first session.

### III.     Whether the ALJ Improperly Exceeded the Scope of the Hearing

Next, Plaintiffs assert that the ALJ improperly relied on irrelevant and inadmissible evidence and made factual findings outside the scope of the administrative hearing.

Plaintiffs first argue that the ALJ made improper factual findings that B.M.'s mother was his teacher and that B.M. attended the Encinitas Country Day School. However, the IDEA contains a procedural requirement that certain individuals participate in the IEP formulation process. These individuals include the student's parent as well as the regular and special education teachers of the student. 20 U.S.C. § 1414(d)(1)(B). That B.M.'s mother home-schooled him for a time is not a separate issue, but is relevant to whether the composition of the IEP team complied with the statutory requirements. Similarly, the fact that B.M. attended Encinitas Country Day School is relevant as it is part of his educational history. The ALJ recognized that the IEP team was not required to obtain information from Encinitas Country Day School, as Mrs. Mahoney did not inform them that B.M. attended the school for one semester. (AR 1189.) An IEP is evaluated in light of the information available at the time it was developed. <u>Adams v. State of Oregon</u>, 195 F.3d 1141, 1149 (9th Cir. 1999).

Plaintiffs also contend that the ALJ improperly relied on excluded and inadmissible evidence in making its findings. Specifically, Plaintiffs refer to a Developmental History Questionnaire filled out by Mrs. Mahoney for the IEP team but not admitted into evidence during the administrative hearing. The record shows that the ALJ did not rely on this document, but merely permitted District counsel to use it to refresh Mrs. Mahoney's recollection regarding the information she gave the District. (AR 996-98.) The Court notes that, during such hearings, a California administrative law judge may consider "[a]ny relevant evidence . . . if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory

/ / /

rule which might make improper the admission of such evidence over objection in civil actions." 5 C.C.R. § 3082.

The Court concludes that the ALJ made appropriate findings within her discretion.

### Conclusion

The Court concludes that the ALJ did not err in finding that the IEP developed by the District for B.M. in early 2008 qualified as a free appropriate public education. Accordingly, the Court grants Defendant's motion for summary judgment and denies Plaintiffs' motion for summary judgment.

IT IS SO ORDERED.

DATED: April 8, 2009

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT